GEORGE H. NASSAR *vs.* COMMONWEALTH
(and a companion case[1]).

Suffolk.    November 7, 1960. — January 3, 1961.

Present:  WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Delinquent Child. Jurisdiction,* Delinquent child. *Statute,* Effective
date, Retroactive statute, Construction, Repeal. *Words,* "Full effect."

The effective dates of the various sections of St. 1948, c. 310, must be
determined by the specific provisions of § 31 rather than by the general
language of the emergency preamble of the chapter.   [587]
An amendment of a statute constitutes, for the purposes of G. L. c. 4,
§ 6, Second, a "repeal" by implication of such original provisions of
the statute as are inconsistent with its amended provisions.   [589]
Respecting a boy who committed a homicide at the age of sixteen years
and was indicted therefor in 1948 and who after January 1, 1949,
pleaded guilty to murder in the second degree, the amendments of
G. L. c. 119, §§ 52, 74, by St. 1948, c. 310, §§ 3, 12, effective January 1,
1949, read with G. L. c. 4, § 6, Second, did not operate retroactively
to preclude imposition, following the plea, of sentence to life imprison-
ment for the crime of murder in the second degree without any delin-
quency proceeding having been begun and dismissed under G. L. c. 119,
§ 61.   [590–591]

Two PETITIONS for writs of error, filed in the Supreme
Judicial Court for the county of Suffolk on September 22,
1959, and April 21, 1959.

The cases were reserved and reported without decision
by *Cutter, J.*

*Joseph G. Crane,* for Nassar.

*Anthony J. Randazzo,* for Pullino.

*John Warren McGarry,* Assistant Attorney General
(*James W. Bailey,* Assistant Attorney General with him,)
for the Commonwealth.

CUTTER, J.  On September 17, 1948, the petitioners,
Nassar and Pullino, were each indicted for the murder of
one Kirmil which occurred on April 15, 1948.  On May 20

---

[1] Gennaro Pullino *vs.* Commonwealth.

they had been "bound over for the grand jury—no juvenile proceedings had." At the time of the crime, each of them was sixteen years of age. On January 17, 1949, each petitioner retracted a plea of not guilty of murder in the first degree, pleaded guilty to murder in the second degree, and was sentenced to life imprisonment in the State prison. They are now in custody in the Correctional Institution at Walpole under warrants based upon these sentences.

On January 17, 1949, the relevant statutes in effect were those considered in *Metcalf* v. *Commonwealth*, 338 Mass. 648,[2] and found in G. L. c. 119, §§ 52, 61, and 74, as amended by St. 1948, c. 310, §§ 3, 7, and 12, respectively. Chapter 310 was approved May 13, 1948. By § 31, it was provided: "For the purpose of the appointment of the advisory committee on service to youth this act shall take effect on its passage; for the purpose of the appointment of the youth service board this act shall take effect on September first in the current year and the remainder of this act shall take full effect on January first, nineteen hundred and forty-nine; provided, that the board shall have until July first,

---

[2] Pertinent portions of these sections, in force on January 17, 1949, are set out below. Words omitted by St. 1948, c. 310, from the sections as they formerly appeared are set out in brackets. Words inserted by c. 310 are italicized. Section 52. "The following words as used in the following sections shall, except as otherwise specifically provided, have the following meanings: 'Court', the Boston juvenile court or a district court, except the municipal court of the city of Boston. 'Delinquent child', a child between seven and seventeen who violates any city ordinance or town by-law or commits an offence not punishable by death [or by imprisonment for life]." Section 61. 'If it be alleged in a complaint made under sections fifty-two to sixty-three, inclusive, that a child *between fourteen and seventeen years of age* has committed an offence against a law of the commonwealth . . . and the court is of opinion that . . . he should be tried for said offence . . . instead of being dealt with as a delinquent child, the court may, after a hearing on said complaint, order it dismissed.'' Section 74. "Criminal proceedings shall not be begun against any child between [seven] *fourteen* and seventeen years of age, except for offences punishable by death [or imprisonment for life], unless proceedings against him as a delinquent child have been begun and dismissed as required by section sixty-one.'' Chapter 119, §§ 75, 76, 77, 80, and 81, as amended by St. 1948, c. 310, §§ 13, 14, 15, 17, and 18, respectively, discuss criminal complaints and proceedings brought after delinquency "proceedings have been begun and dismissed as required by" § 61. There is now no occasion to consider these sections or their relation to G. L. c. 218, § 29.

The provisions of § 52 and § 74 have been amended by St. 1960, c. 353, §§ 1, 3, to strike out the exception of offences punishable by death, but these amendments are not now relevant.

nineteen hundred and forty-nine to assemble the technical staff necessary to make the diagnosis of each person committed to it . . . ."

Following the decision in the *Metcalf* case, Nassar and Pullino each filed a petition for a writ of error. There was an agreement of all material facts. The cases were reserved and reported by a single justice without decision.

The petitioner for a writ of error in the *Metcalf* case was between thirteen and fourteen when in 1956 he killed a man. By indictment Metcalf was charged with murder in the first degree. He pleaded guilty in the Superior Court to murder in the second degree and was sentenced to imprisonment for life. This court held (at p. 653) that "acceptance of the . . . plea of guilty to murder in the second degree defined . . . [the] offence as . . . noncapital" and that it was thus "established that . . . [Metcalf] was guilty of conduct which, in view of his age, constituted delinquency and not a crime. This being so, the Superior Court could not impose sentence upon" Metcalf. The judgment based upon Metcalf's plea of guilty was reversed, with leave to institute delinquency proceedings in the appropriate District Court under c. 119, § 52, et seq.

There are differences between the present cases and the *Metcalf* case. (1) The homicide, the indictment, the plea of guilty, and the sentence in the *Metcalf* case all occurred long after January 1, 1949, the date when the relevant portions of St. 1948, c. 310, became effective by virtue of § 31 of the 1948 statute already quoted. In the present cases, the homicide and the indictments took place before January 1, 1949, and the pleas of guilty and the sentences took place after that date. (2) Metcalf was under the age of fourteen when the crime was committed, a circumstance that rendered unavailable the alternative method of disposition under c. 119, § 61, as amended by St. 1948, c. 310, § 7 (see 338 Mass. 648, 655–656), and § 75 and following sections. Nassar and Pullino were sixteen years old when they killed Kirmil. This distinction from the *Metcalf* case becomes unimportant in view of our decision.

The vital question is whether St. 1948, c. 310, operated to prevent the imposition of sentences in the Superior Court after January 1, 1949, following the pleas of guilty to murder in the second degree also made after that date. The answer depends upon whether the Legislature intended c. 310 to apply where a homicide and indictments therefor took place before January 1, 1949, and where, by reason of accepted pleas of guilty made after January 1, 1949, to an offence less than capital, the children could no longer be prosecuted for the capital offence.

1.   Statute 1948, c. 310, was declared to be an emergency law by a preamble defining its purpose as "to make immediately effective certain desirable changes in the law relating to wayward and delinquent children." Section 31, already quoted, provided (1) that the act took "effect on its passage" (which occurred May 13, 1948) only with respect to "the appointment of the advisory committee on service to youth"; (2) that, "for . . . the appointment of the youth service board," the act was to be effective on September 1, 1948; and (3) that "the remainder of this act shall take *full* effect on" January 1, 1949 (emphasis supplied). The specific provisions of § 31, rather than the general and somewhat obscure language of the preamble, determine when the various sections of the 1948 act became effective. See *Milk Control Bd.* v. *Gosselin's Dairy, Inc.* 301 Mass. 174, 179-180.

Nassar and Pullino argue that the use of the words "full effect" in § 31 (with respect to the sections which became operative on January 1, 1949) imply that the act was thereafter to have the widest possible scope of application. We do not interpret the word "full" as having special meaning beyond excluding the possibility that the effectiveness of the act after January 1, 1949, was not to be defeated by the proviso in § 31 with respect to the permissible delay until July 1, 1949, in assembling the technical staff for diagnosis. If the word "full" was intended to have greater significance, the Legislature did not say enough to make that significance clear.

2.   The 1948 amendment of c. 119, § 52, merely redefined

the term "delinquent child." The prohibition of criminal action against a "delinquent child" is found in § 74, viz., "Criminal proceedings *shall not be begun*" (emphasis supplied) unless delinquency proceedings have been begun and dismissed under § 61. When criminal proceedings were "begun" by the indictments on September 17, 1948, the new form of § 74 had not become effective. Even after the effective date, the language of § 74, read literally, would not prohibit the Superior Court from completing proceedings pursuant to earlier indictments for first degree murder, a charge which included the lesser offence of second degree murder (an offence "punishable by death or imprisonment for life" excepted from the prohibition of § 74 prior to January 1, 1949). To this charge there were pleas of guilty, establishing Nassar's and Pullino's guilt. Both the first degree charge and the included lesser offence were crimes when committed and there was then no possibility that they could constitute mere delinquency so long as a charge of at least second degree murder was sustained. This was not the situation in the *Metcalf* case, for, when Metcalf committed homicide, murder in the second degree by a child over fourteen and under seventeen "constituted delinquency and not a crime" (see the *Metcalf* case, 338 Mass. 648, 653) at least until a delinquency complaint had been initiated and dismissed under § 61.

The question whether the 1948 amendments may be applied retroactively must be considered in the light of the general rule of construction found in G. L. c. 4, § 6, Second. The provision is applicable only to "strictly penal" statutes. See *Wilson* v. *Head,* 184 Mass. 515, 519; *Pittsley* v. *David,* 298 Mass. 552, 554. Clause Second has remained in virtually its present form since St. 1869, c. 410, and cases decided before the 1869 statute was enacted may no longer be relevant. See e.g. *Commonwealth* v. *Marshall,* 11 Pick. 350, 351. See also *Commonwealth* v. *Kimball,* 21 Pick. 373, 376–377. So far as pertinent, § 6 provides: "In construing statutes the following rules shall be observed, unless their observance would involve a construction inconsistent with

the manifest intent of the law-making body or repugnant to the context of the same statute: . . . Second, The repeal of a statute shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, prosecution or proceeding pending at the time of the repeal for an offence committed, or for the recovery of a penalty or forfeiture incurred, under the statute repealed.'' The 1948 amendments repealed those portions of §§ 52 and 74 which, prior to the 1948 amendments, made inevitably criminal in character a charge of second degree murder by a child between the ages of fourteen and seventeen. To be sure, after dismissal, under § 61, of a delinquency complaint, a child over fourteen and under seventeen could still be prosecuted for second degree murder as a criminal, even after January 1, 1949. Nevertheless, the 1948 statute did operate to make it necessary to treat the child as a delinquent, until and unless the court should determine as provided in § 61 that ''he should be tried for said offence . . . instead of being dealt with as a delinquent child.''

The general intention of c. 4, § 6, Second, is to preserve, even after legislative change of a statute, the liability of an offender to punishment for an earlier act or omission made criminal by the statute repealed in whole or in part. The rule of construction is not made inapplicable by the circumstance that the 1948 statute merely amended §§ 52 and 74 without repealing them in toto. To the extent that the amended sections were inconsistent with the earlier provisions, there was an implied repeal of the latter. See *Dexter* v. *Commissioner of Corps. & Taxn.* 316 Mass. 31, 51. The purpose of this rule (see *Commonwealth* v. *Drohan,* 210 Mass. 445, 447–448) is as pertinent (a) to partial repeals or (b) to amendments having the effect of a repeal in whole or in part, as it is to total repeals.

The 1948 amendments were not so wholly procedural in character as to make applicable any general rule of construction that statutory changes, merely procedural in character, should be given retroactive effect, see *Berkwitz, petitioner,* 323 Mass. 41, 46–47, or that the punishment alone

was affected. *Commonwealth* v. *Wyman,* 12 Cush. 237, 239–242. After the 1948 amendments became effective, as we have already indicated, a charge of second degree murder against a child over fourteen and under seventeen would be dealt with (until action under § 61) as a delinquency matter. Theretofore such a charge would have necessarily been dealt with in a criminal proceeding, and, if sustained, would have resulted in a sentence to life imprisonment. See G. L. c. 265, § 2. Because the 1948 amendments were favorable to Nassar and Pullino, we need not discuss whether they could constitutionally have been applied to them retroactively without constituting ex post facto laws. See *Commonwealth* v. *Vaughn,* 329 Mass. 333, 339. In any event, the changes are sufficiently substantive, and affect so much more than mere procedure and the amount of punishment, as to lead us to apply them only prospectively in the absence of a clearly expressed intention to have them effective retroactively. See Rappeport, Determination of Delinquency in the Juvenile Court: A Suggested Approach, 1958 Wash. Univ. L. Q. 123, 138–143. This view makes it appropriate for us to consider (see G. L. c. 4, § 6) whether our interpretation of the 1948 amendments "would involve a construction inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute" as shown by the language used in the statute and the legislative history of the amendments.

3. If the indictments had not been obtained prior to January 1, 1949, § 74 would have prevented criminal proceedings from being "begun," so that delinquency proceedings alone could thereafter be commenced until, under § 61, delinquency proceedings had been dismissed. It may be thought that, in view of the broad humanitarian purposes of the amendments, the Legislature would have wanted those amendments to apply to all pending cases not theretofore completed by sentence, so that the widest possible number of children would share their benefits. To interpret the statute as having no retroactive effect does not seem to us "absurd and unreasonable" (cf. *McCarthy* v. *Woburn*

*Housing Authy., ante,* 539, 542) for all statutes must take effect as of some date. Reading together § 31 of the 1948 amendments and G. L. c. 4, § 6, Second, we perceive no affirmative indication that the Legislature wished the amendments to apply to offences before January 1, 1949.[3] We find no such intention in the legislative history of the 1948 amendments which were closely based upon the report of the special commission established to make a further investigation and study relative to the prevention of child delinquency. 1948 Senate Doc. No. 470, esp. at pp. 27, 32, 36, 41, 67. See 1948 Senate Journ. 823–824.

4. There was no error in the sentences by the Superior Court upon Nassar's and Pullino's pleas of guilty to second degree murder.

*Judgments affirmed.*

---

[3] We recognize that G. L. c. 119, § 53, has always required that the provisions of §§ 52 to 63 "be liberally construed so . . . that, as far as practicable," children brought before the court "shall be treated, not as criminals, but as children in need of . . . guidance." Section 53, however, seems to us to be directed not to liberal construction of the sections upon an issue such as retroactivity, but to the purpose to treat these children in fact subject to the named sections as delinquents rather than criminals.