NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11712

COMMONWEALTH  vs.  DAMIEN DIDAS.


Middlesex.      December 4, 2014. - March 13, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Controlled Substances.  Practice, Criminal, Sentence.  Statute,
Construction, Retroactive application, Amendment.



Indictment found and returned in the Superior Court
Department on October 20, 2011.

A pretrial motion to apply to the defendant's case
amendments made to G. L. c. 94C was heard by Garry V. Inge, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Bethany Stevens, Assistant District Attorney, for the
Commonwealth.
Arnold A. Blank, Jr., Committee for Public Counsel
Services, for the defendant.
Barbara J. Dougan, for Families Against Mandatory Minimums,
amicus curiae, submitted a brief.


BOTSFORD, J.  In this case we return to St. 2012, c. 192,

"An Act relative to sentencing and improving law enforcement

tools" (Crime Bill).  More specifically, we revisit the question

whether certain provisions of the Crime Bill apply to drug crimes with which the defendant was charged before the statute's effective date, but for which the defendant was not convicted until after the effective date. See Commonwealth v. Galvin, 466 Mass. 286 (2013). See also Commonwealth v. Bradley, 466 Mass. 551 (2013).

The Crime Bill had an emergency preamble and was effective on passage, which occurred on August 2, 2012. Among other things, it made a number of changes to provisions of the Commonwealth's controlled substances law, G. L. c. 94C.[1] The Crime Bill also included a section specifying that certain provisions of the legislation were to apply retroactively to individuals who previously had been convicted of certain drug crimes with mandatory minimum sentences and were still serving those sentences. See St. 2012, c. 192, § 48 (§ 48). In Galvin, 466 Mass. at 286-287, 290-291, based on our review of the Crime Bill's language and purpose, we interpreted § 48's retroactivity provisions to mean that certain of its mandatory minimum sentence reductions should be applied retroactively to a defendant who had been charged with committing a drug offense

---

[1] These changes to G. L. c. 94C include increases to the weights required to establish certain drug offenses; reductions to the mandatory minimum sentences associated with certain drug crimes; and a reduction in the radius of school zones, which influences whether those convicted of certain drug violations in specified areas must be subject to mandatory sentence enhancements. See, e.g., St. 2012, c. 192, §§ 21, 25, 30.

before the Crime Bill's effective date, but who was not tried, convicted, or sentenced until after that date. Thereafter, in Bradley, 466 Mass. at 561, we held that the school zone radius reduction included in § 30 of the Crime Bill should be applied retroactively to an individual who committed a drug offense prior to the Crime Bill's effective date, where the adjudication of the case did not occur until later.

The defendant here has been indicted on a charge of trafficking in cocaine in violation of G. L. c. 94C, § 32E (b) (2), the second tier of this trafficking crime.[2] The indictment was pending on August 2, 2012, the Crime Bill's effective date, and remains pending. The Crime Bill amends § 32E (b) (2), along with § 32E (b) (1), in two ways: by striking out the previous versions of these two clauses and replacing them with new clauses that reconfigure or redefine the trafficking weights defining each, and by reducing the mandatory minimum sentence applicable to each. See St. 2012, c. 192, § 21. A judge of the Superior Court has agreed with the defendant that, following this court's decisions in Galvin and Bradley, both the

---

[2] General Laws c. 94C, § 32E (b), prohibits trafficking in "a controlled substance defined in clause (4) of paragraph (a) . . . of Class B of [§ 31]" (emphasis added). Cocaine is one of the controlled substances included in class B. See G. L. c. 94C, § 31. For ease of reference, we refer to § 32E (b) in this opinion as prohibiting trafficking in cocaine. Section 32E (b) defines four tiers of trafficking in cocaine, differentiated by the weight of the cocaine in question, and prescribes an increased sentence for each successive tier.

amendments to § 32E (b) (2) effected by § 21 of the Crime Bill apply to this defendant.  We conclude that, in accordance with Galvin, 466 Mass. at 290-291, § 21's reduction of the mandatory minimum sentence required for a violation of § 32E (b) (2) applies retroactively to the defendant, but that § 21's redefinition of the minimum and maximum trafficking weights does not.[3]

Background.[4]  On May 3, 2011, Somerville police officers observed the defendant engaging in what they believed to be street level drug transactions.  The police later searched the defendant and discovered him to be in possession of eight bags of cocaine with a total weight of 28.14 grams.  On October 20, 2011, the defendant was indicted on a charge of violating G. L. c. 94C, § 32E (b) (2), which at the time prohibited trafficking in cocaine with a net weight of "[t]wenty-eight grams or more, but less than one hundred grams," and imposed a mandatory minimum prison sentence of five years and a maximum sentence of not more than twenty years.  See G. L. c. 94C, § 32E (b) (2), as amended through St. 2010, c. 256, § 70.  See also G. L. c. 94C, § 31.

---

[3] We acknowledge the amicus brief submitted by Families Against Mandatory Minimums in support of the defendant.

[4] Because the defendant's case remains pending and untried, we summarize allegations taken from the Commonwealth's statement of the case that was filed in the Superior Court.  The summarized allegations are provided only to provide context; they have not been proved.

On August 2, 2012, the Crime Bill was enacted and went into effect. As noted, § 21 amended § 32E (b) (1), the first tier of trafficking in cocaine, by increasing the net weights defining the tier to the range of from eighteen grams to thirty-six grams -- the first tier previously had been defined as from fourteen grams to twenty-eight grams -- and to establish a mandatory minimum sentence of two years, rather than the previous mandatory minimum of three years. See G. L. c. 94C, § 32E (b) (1), as amended by St. 2012, c. 192, § 21. Section 32E (b) (2), the second trafficking tier, was amended to redefine the weight range for the tier as from thirty-six grams to one hundred grams -- previously, the range had been from twenty-eight to one hundred grams -- and to set the mandatory minimum sentence as three and one-half years instead of the previous five years.[5] See G. L. c. 94C, § 32E (b) (2), as amended by St. 2012, c. 192, § 21. Thus, if the defendant were to be charged and convicted under the version of § 32E (b) that incorporates the Crime Bill amendments, the defendant could only be found guilty under § 32E (b) (1), the lowest tier of trafficking in cocaine, rather than § 32E (b) (2), the second tier.

---

[5] The Crime Bill also amended the third and fourth tiers of trafficking in cocaine, G. L. c. 94C § 32E (b) (3) and (4), by lowering the mandatory minimum sentence for each tier, but did not make any change to the trafficking weights in either tier. See St. 2012, c. 192, §§ 22, 23.

Prior to trial, on September 28, 2012, the defendant filed a motion to apply all the Crime Bill's amendments to § 32E (b) (1) and (2) to his case.  He later filed a supplemental motion renewing his request in light of this court's decisions in Galvin and Bradley.  On February 6, 2014, the judge allowed the defendant's motion in a written memorandum of decision.  On March 3, the Commonwealth filed a notice of appeal from the judge's order pursuant to Mass. R. Crim. P. 15 (a) (1), as appearing in 422 Mass. 1501 (1996), arguing that the order in substance constituted an allowance of a motion to dismiss so much of the indictment as charged trafficking in cocaine in violation of § 32E (b) (2), leaving in place the lesser-included offense of trafficking in cocaine in violation of § 32E (b) (1).[6] We granted the Commonwealth's application for direct appellate review.

Discussion.  "As a general rule of statutory construction, a newly enacted statute is presumptively prospective, and '[t]he repeal of a statute shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect.'"  Galvin, 466 Mass. at 290, quoting G. L. c. 4, § 6, Second.  See Bradley, 466 Mass. at 553; Commonwealth v. Dotson, 462 Mass. 96, 99-100

---

[6] The defendant does not contest the Commonwealth's characterization of the judge's order as a partial motion to dismiss, or argue that the Commonwealth was not entitled to appeal the order pursuant to Mass. R. Crim. P. 15 (a) (1).  We accept the Commonwealth's characterization, and we do not discuss the issue further in this opinion.

(2012). "The consequence of this presumption is to 'preserve, even after legislative change of a statute, the liability of an offender to punishment for an earlier act or omission made criminal by [a] statute repealed in whole or in part.'" Bradley, supra, quoting Dotson, supra at 99-100. The presumption of prospective application governs "unless [its] observance would involve a construction inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute." Galvin, supra at 290, quoting G. L. c. 4, § 6. See Bradley, supra.

The defendant in Galvin had been charged with committing a drug crime -- distribution of cocaine as a second or subsequent offense in violation of G. L. c. 94C, § 32A (d) -- before August 2, 2012, the effective date of the Crime Bill, but his case was not adjudicated until after that date. Galvin, 466 Mass. at 287. Section 14 of the Crime Bill amended § 32A (d) to reduce the section's mandatory minimum sentence of five years to three and one-half years and, in sentencing the defendant, the judge imposed the amended three and one-half year mandatory minimum. Id. at 288. The question raised on appeal was whether, given the date of his offense and indictment, the defendant was entitled to the benefit of this reduced mandatory minimum sentence effected by § 14 of the Crime Bill. Id. at 286-287.

In answering this question, we observed that "one of [the Crime Bill's] primary purposes was to significantly reduce the sentences to be served by individuals under the mandatory minimum provisions of a wide range of drug-related offenses." See Galvin, 466 Mass. at 291.  Given this statutory goal of reducing sentences served for certain drug offenses (including violations of § 32A [d]) going forward, and considering the fact that in the retroactivity provisions of § 48 of the Crime Bill the Legislature had expressly provided for application of the legislation's reduced mandatory minimums to individuals previously convicted of these crimes and currently serving prison sentences, we concluded that to deny the defendant in that case the benefit of the Crime Bill's reduced mandatory minimum sentence for violating § 32A (d) would be "anomalous, if not absurd," id. at 291, and accordingly "inconsistent with the manifest intent of the [Legislature] as well as repugnant to the context of the [Crime Bill]."  Id., quoting G. L. c. 4, § 6.

In contrast to the change to § 32A (d) at issue in Galvin, the defendant here seeks to benefit from changes to § 32E (b) (2) that do not merely reduce the applicable mandatory minimum sentence but also effectively redefine the elements of the underlying crime for which he has been indicted.  This change is unquestionably substantive in nature:  by increasing the minimum drug weight required for a violation of § 32E (b) (2), the

Legislature has altered what the Commonwealth must prove in order to convict the defendant under this statute. See Dotson, 462 Mass. at 100 (legislative amendment to G. L. c. 272, § 53, differentiating between first and second offenses for disorderly conduct has substantive impact on how Commonwealth must prosecute offenses). The result of applying the increased drug weights to the defendant's case would be that the defendant can be charged only with violating § 32E (b) (1), which, as the Commonwealth correctly contends, is essentially a lesser included offense of § 32E (b) (2).

The defendant does not contest this characterization of the redefined weights as a change to the elements of the crime of which he is accused, or the observation that this is a more substantive change than the one applied retroactively in Galvin. Rather, he argues that regardless of the nature of the change, retroactive application of the reconfigured drug weights to him is consistent with the manifest intent of the Crime Bill and of § 48 in particular. Section 48 provides:

> "Notwithstanding any general or special law to the contrary, any person incarcerated on the effective date of this act for an offense which, at the time such person was sentenced on such offense, requires serving a minimum term of incarceration before such person is eligible for probation, parole, work release or release shall be eligible for probation, parole, work release and deductions in sentence for good conduct under [§§] 12 to 29, inclusive" (emphasis added).

St. 2012, c. 192, § 48.  The defendant argues that because the reconfigured trafficking weights are included in § 21 of the Crime Bill and § 21 itself is included within §§ 12 to 29, the reconfigured trafficking weights therefore come within the portion of the Crime Bill to which the retroactivity provision in § 48 specifically applies.  He concludes from this that the retroactivity provision in § 48 demonstrates a clear legislative intent to apply all the provisions of § 21 retroactively to him, not merely those provisions that affect his eligibility for a reduced mandatory minimum sentence under § 32E (b) (2).

The difficulty with the defendant's argument is that it substantially ignores key language of § 48 the Crime Bill.  By its express terms, § 48 focuses on offenders with mandatory minimum terms of incarceration, and specifically on these offenders' eligibility "for probation, parole, work release and deductions in sentence for good conduct."  The reductions in the mandatory minimum sentences included within §§ 12 to 29 of the Crime Bill directly affect a drug offender's eligibility for virtually all of these programs, because the programs otherwise would not be available until the mandatory minimum portion of a sentence has been served.  See G. L. c. 94C, § 32H.  For the same reasons that we discussed in Galvin, see 466 Mass. at 291, it would be "inconsistent with the manifest intent" and "repugnant to the context" of the Crime Bill not to apply the

new mandatory minimum sentence for a violation of § 32E (b) (2) expressly set out in § 21 of the Crime Bill to the defendant in this case.  If we did not apply this new mandatory minimum sentence retroactively, a person convicted and sentenced before the enactment of the Crime Bill would be eligible to be released on parole upon completion of the new, shorter mandatory minimum term, but a person who committed the crime on the same day but was convicted and sentenced after its enactment would not be eligible for release until completion of the old, longer mandatory minimum.

But the provisions of § 21 that amend § 32E (b) (1) and (2) by reconfiguring the trafficking weights are a different matter.  These provisions in and of themselves have no direct relationship to eligibility for probation, parole, work release, or good conduct sentence deductions.  Rather, the net weights determine only which tier of trafficking will apply; it is the separate sentencing provisions within each trafficking tier that then define the mandatory minimum sentence for that tier.[7]

---

[7] The defendant's case illustrates the point.  If the reconfigured trafficking weights in § 21 of the Crime Bill were applied retroactively to him, the direct effect would be that the crime with which he is charged would change from trafficking in violation of § 32E (b) (2) to trafficking in violation of § 32E (b) (1).  As a consequence of that change -- not directly -- the mandatory minimum sentence upon conviction would then shift from three and one-half years (§ 32E [b] [2]) to two years (§ 32E [b] [1]).

As Galvin, 466 Mass. at 290-291, suggests, the starting point for any consideration of applying the Crime Bill retroactively to the defendant is § 48. Section 48 specifically refers to mandatory minimum sentences (required "minimum term of incarceration"), and provides that the Crime Bill's amended minimums are to apply to those currently incarcerated. It makes no mention of the redefined trafficking weights that the Crime Bill enacts, and at best, it would be administratively challenging to apply those redefined weights to currently incarcerated individuals.[8] More importantly, it would appear to be beyond the authority of the Department of Correction (department) to treat a person convicted and sentenced for violation of § 32E (b) (2) as effectively convicted and sentenced for violation of § 32E (b) (1) -- the result the defendant seeks in this case.[9]

---

[8] Not everyone previously convicted of trafficking in cocaine in violation of § 32E (b)(2) who was still serving a sentence when the Crime Bill went into effect would be affected by the bill's reconfiguration of the trafficking weight ranges of § 32E (b)(1) and (2). Rather, whether such an inmate would be affected would depend on the actual weight of the cocaine involved in his or her underlying criminal case, and the Department of Correction (department) would have to investigate and determine the actual weight of the drugs at issue in each such person's case. Such an investigation into the underlying facts of each case is certainly outside the scope of the department's responsibilities, if not of its authority, and is, in many cases, difficult if not impossible to accomplish as a practical matter.

[9] We note that although the department began as early as 2012 to apply the Crime Bill's reduced mandatory minimum

If the redefined trafficking weights in § 21 of the Crime Bill do not apply to those who are the direct and explicit beneficiaries of the retroactivity provisions of § 48 -- individuals convicted of drug crimes with mandatory minimum penalties who were previously sentenced and remained incarcerated when the Crime Bill went into effect -- there is no reason or justification for them to apply retroactively to the defendant. In light of this, and of the indirect manner in which the trafficking weight amendments affect mandatory minimum sentences, we conclude that it is not inconsistent with § 48 or with the manifest intent of the Crime Bill generally to confine the retroactive application of the Bill's provisions solely to the revised and reduced mandatory minimum sentences contained within §§ 12 to 29.[10]

---

sentences to those convicted before the Crime Bill's effective date who are still incarcerated, the department did not similarly apply the Crime Bill's amendments to the trafficking weights for cocaine (see St. 2012, c. 192, § 21) and heroin (see St. 2012, c. 192, § 25) to this group. See Memorandum from Charles W. Anderson, Jr., Counsel to Department of Correction, to Hon. Robert A. Mulligan, Chief Justice of Massachusetts Trial Court, et al., at 2-3 (Sept. 18, 2012) (regarding department's implementation of St. 2012, c. 192).

[10] We disagree with the defendant's contention that the reference in § 48 to §§ 12-29 "inclusive" of the Crime Bill as a unit reflects a manifest intent by the Legislature to give every provision of each of these sections retroactive effect, rather than an intent to ensure only that the changes in mandatory minimum sentences would be retroactive. As discussed, this more limited scope of retroactivity is consistent with the actual language of § 48.

In arguing against this result, the defendant asserts that applying the amended drug trafficking weights in § 21 to him furthers a primary purpose of the Crime Bill, namely, to "significantly reduce the sentences to be served by individuals under the mandatory minimum provisions of a wide range of drug-related offenses." Galvin, 466 Mass. at 291. As previously described, see note 7, supra, retroactive application to the defendant of the Crime Bill's reconfigured drug weights for the trafficking offenses defined in G. L. c. 94C, § 32E (b) (1) and (2), would result in his receiving, if convicted, two reductions in the mandatory minimum term he must serve when compared to the sentence he would have received under the version of § 32E (b) (2) in effect at the time he was indicted, thereby furthering the Crime Bill's goal of reducing the mandatory minimum sentences served for drug-related offenses. This, he argues, is additional evidence that retroactive application of the amended drug weights to him is consistent with the manifest intent behind the new statute.

However, in light of the presumption of prospectivity in G. L. c. 4, § 6, Second, the mere fact that retroactive application of the amended trafficking weights to the defendant might appear to advance an important purpose of the Crime Bill, by itself, does not necessarily mean that failing to do so is inconsistent with the statute's purpose. If it were otherwise,

every amendment or partial repeal and amendment of a criminal statute would need to be given retroactive effect, in direct conflict with the presumption of prospectivity.

In sum, although retroactive application of the increased drug weights to cases pending at the time that the Crime Bill became effective might further advance an important goal of the Crime Bill, in contrast to the Galvin and Bradley cases, here, we conclude that prospective application is not contrary to its "manifest intent" or "repugnant" to the statute's context.[11] G. L. c. 4, § 6.

Finally, the defendant invokes the "rule of lenity," arguing that in interpreting the Crime Bill, any ambiguity as to whether the increased drug weights should apply retroactively to him must be resolved in his favor. See Commonwealth v. Williamson, 462 Mass. 676, 679 (2012), quoting Commonwealth v. Roucoulet, 413 Mass. 647, 652 (1992) ("when a criminal statute can 'plausibly be found to be ambiguous,' the rule of lenity

---

[11] Although in Commonwealth v. Bradley, 466 Mass. 551 (2013), and Watts v. Commonwealth, 468 Mass. 49 (2014), we treated these two exceptions to the rule of prospective application as distinct analyses, at other times, we have determined that a single line of inquiry is sufficient to address both exceptions. Compare, e.g., Bradley, supra at 553; Watts, supra at 55, 60, with Commonwealth v. Galvin, 466 Mass. 286, 290-291 (2113); Commonwealth v. Dotson, 462 Mass. 96, 100-101 (2012). Addressing both exceptions together is appropriate here, where the defendant advances essentially the same argument under the repugnancy exception as he does under the manifest intent exception, namely, that applying the amended drug weights retroactively results in lower mandatory minimum sentences for more individuals, in keeping with the Crime Bill's purpose.

applies, and we 'give the defendant the benefit of the ambiguity'"). However, the rule of lenity does not come into play when the question to be answered is whether a particular criminal statute should be applied retroactively to a defendant who is charged with committing an offense before that statute went into effect. This inquiry is governed instead by G. L. c. 4, § 6, Second. Even if this were not the case, "[t]he rule of lenity does not require . . . that absent an ambiguity we construe a penal statute most favorably to a defendant." Commonwealth v. Carrion, 431 Mass. 44, 46 (2000). See Watts v. Commonwealth, 468 Mass. 49, 52 n.8 (2014). Here, given the presumption that new statutes will be applied prospectively, the absence of any explicit indication that the Legislature intended the increased drug weights to apply retroactively, and our observation that applying the increased drug weights retroactively would appear to create substantial practical difficulties, we conclude that no ambiguity exists concerning the retroactive application of the redefined drug trafficking weights in § 21 of the Crime Bill.

Conclusion. The reduced mandatory minimum sentence under G. L. c. 94C, § 32E (b) (2), as amended by St. 2012, c. 192, § 21, will apply to the defendant if he is convicted of that offense. The reconfigured drug trafficking weights provided in G. L. c. 94C, § 32E (b) (1) and (2), as amended by St. 2012,

c. 192, § 21, are not applicable to the defendant.  The order of the Superior Court dated February 6, 2014, is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

<u>So ordered</u>.