NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12482


        JEFFREY S. ROBERIO  vs.  MASSACHUSETTS PAROLE BOARD.



        Suffolk.      January 8, 2019. - October 24, 2019.

     Present:  Gants, C.J., Lenk, Lowy, Budd, Cypher, & Kafker, JJ.


Parole.  Imprisonment, Parole.  Constitutional Law, Parole, Ex
     post facto law.  Due Process of Law, Parole, Retroactive
     application of statute.  Statute, Retroactive application.
     Practice, Criminal, Parole.




     Civil action commenced in the Superior Court Department on
August 24, 2016.

     The case was heard by Christine M. Roach, J., on motions
for judgment on the pleadings.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Benjamin H. Keehn, Committee for Public Counsel Services,
for the plaintiff.
     Matthew P. Landry, Assistant Attorney General, for the
defendant.
     Elizabeth Zito, of New York, Janie Y. Miller, of
California, David J. Apfel, & Marielle Sanchez, for
Massachusetts Association of Criminal Defense Lawyers & others,
amici curiae, submitted a brief.

CYPHER, J.  This case concerns whether retroactive application of a 1996 amendment to G. L. c. 127, § 133A (§ 133A), which prescribes parole eligibility conditions for prisoners serving life sentences, is an ex post facto violation, either on its face or as applied to the plaintiff, Jeffery S. Roberio.

In 1986, seventeen year old Roberio was convicted of armed robbery and murder in the first degree premised on theories of felony-murder, deliberate premeditation, and extreme atrocity or cruelty, and he was sentenced to life in prison without the possibility of parole.  As a result of our decision in Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655 (2013), S.C., 471 Mass. 12 (2015) (Diatchenko I), which applied Miller v. Alabama, 567 U.S. 460, 479 (2012), and invalidated mandatory life sentences for juvenile homicide offenders, Roberio became immediately eligible for parole.

In 2015, the defendant Parole Board (board) denied Roberio's application for parole and applied the 1996 amendment to § 133A that increased the maximum permissible period between subsequent applications for parole from three years to five years.  See St. 1996, c. 43.  Roberio challenged the board's decision in the Superior Court, and a judge concluded that the board did not abuse its discretion.

We allowed Roberio's application for direct appellate review and conclude that because the primary aim of the 1996 amendment was to afford relief to families of murder victims, the Legislature intended the amendment to apply retroactively. We also conclude that the amendment is not unconstitutional on its face. However, further discovery concerning the board's practical implementation of the 1996 amendment is necessary to determine whether application of the amendment to Roberio is nonetheless unconstitutional. Accordingly, we vacate the Superior Court judge's order allowing the board's motion for judgment on the pleadings and remand for further proceedings consistent with this opinion.[1]

Background and facts. The details of Roberio's crimes are set forth in Commonwealth v. Roberio, 440 Mass. 245, 246-247 (2003) (affirming convictions), and need not be repeated here. It suffices to say that as a juvenile, Roberio devised and executed a vicious robbery, during which he and another individual brutally beat and strangled an elderly man to death.

In 2015, the board unanimously denied Roberio's first parole application on the ground that he was not "fully

---

[1] We acknowledge the amicus brief submitted by the Massachusetts Association of Criminal Defense Lawyers; the Juvenile Law Center; Prisoners' Legal Services; Northeastern University School of Law, Prisoners' Rights Project; Harvard Law School, Prison Legal Assistance Project; and the Coalition for Effective Public Safety.

rehabilitated."  The board cited Roberio's lack of corrective programming aimed at addressing his substance abuse, anger, and violence issues, issues which Roberio claimed had led to the very murder for which he was incarcerated, leaving the board with serious concerns regarding "whether he still presents a risk of harm to the community, and whether his release is compatible with the best interest of society."  In conjunction with this denial, the board ordered a review in five years and advised that during those five years "Roberio should engage in rehabilitative programming that addresses substance abuse, anger, violence, and any potential mental health issues that may impair his ability to function as a law abiding citizen in society."[2]

---

[2] General Laws c. 127, § 133A, provides in pertinent part:

"After [a parole hearing] the parole board [(board)] may, by a vote of two-thirds of its members, grant to such prisoner a parole permit to be at liberty upon such terms and conditions as it may prescribe for the unexpired term of his sentence.  If such permit is not granted, the . . . board shall, at least once in each ensuing five year period, consider carefully and thoroughly the merits of each such case on the question of releasing such prisoner on parole, and may, by a vote of two-thirds of its members, grant such parole permit."

See 120 Code Mass. Regs. § 301.01(5) (2017) ("In cases involving inmates serving life sentences with parole eligibility, a parole review hearing occurs five years after the initial parole release hearing, except where the [board] members act to cause a review at an earlier time").

At the time Roberio committed his crimes, § 133A provided that when the board denied a prisoner who was serving a life sentence parole, it was required to "carefully and thoroughly" reconsider the merits of that prisoner's case "at least once in each ensuing three year period."  See G. L. c. 127, § 133A, as amended through St. 1982, c. 108, § 2.  We refer to the period between the board's denial of parole and a prisoner's subsequent review as a "setback" or "set-back period."

Roberio brought his challenge to the board's decision in Superior Court pursuant to G. L. c. 249, § 4, arguing that the board abused its discretion in failing to consider adequately his juvenile status in making its parole determination.  He also sought a declaration, pursuant to G. L. c. 231A, that the board's application of the 1996 amendment to him posed a significant risk of prolonging his incarceration and, as a result, violated his constitutional right to be protected from the operation of ex post facto laws, as provided in art. I, § 10, of the United States Constitution and art. 24 of the Massachusetts Declaration of Rights.  The judge denied Roberio's subsequent motions for judgement on the pleadings and summary judgment, and allowed the board's cross motion for judgment on the pleadings.  The judge found that the board did not abuse its discretion in denying Roberio's parole, and she concluded that

Roberio's claim of increased punishment was speculative and conjectural.

Discussion. 1. Retroactive application of the 1996 amendment. As an initial matter, the parties agree that the board applied the 1996 amendment retroactively to Roberio. Roberio argues that the Legislature did not intend for the 1996 amendment to operate retroactively, and therefore, we should apply the ordinary presumption of prospective application in this case. See G. L. c. 4, § 6, Second. The board maintains that the 1996 amendment may operate retroactively because it is procedural in nature and, in any event, prospective application of the amendment would be inconsistent with the aims of its enactment. We need not reach the board's argument that the 1996 amendment is procedural because we conclude that the Legislature in fact intended the amendment to apply retroactively.[3]

---

[3] We also note that this analysis overlaps significantly with our analysis under the ex post facto clauses. A law is not procedural if it "affects substantive rights," Stewart v. Chairman of Mass. Parole Bd., 35 Mass. App. Ct. 843, 845-846 (1994), and a law violates the ex post facto clauses only if it affects "substantive rights," see Commonwealth v. Bargeron, 402 Mass. 589, 591 (1988). Moreover, the United States Supreme Court has stated that even seemingly procedural changes may run afoul of the ex post facto clauses if the practical effect is to affect a substantive right. Weaver v. Graham, 450 U.S. 24, 29 n.12 (1981) (statute could violate ex post facto clause even if statute "takes a seemingly procedural form"). See Clay v. Massachusetts Parole Bd., 475 Mass. 133, 141 n.10 (2016) (procedural changes could constitute ex post facto laws). Therefore, we conclude that it is prudent to engage in the ex

In accordance with our rule of statutory construction, amendments to penal statutes are "presumptively prospective" (citation omitted).  Commonwealth v. Bradley, 466 Mass. 551, 553 (2013).  See G. L. c. 4, § 6, Second.  The objective of this presumption "is to 'preserve, even after legislative change of a statute, the liability of an offender to punishment for an earlier act or omission made criminal by the statute repealed in whole or in part.'"  Bradley, supra, quoting Commonwealth v. Dotson, 462 Mass. 96, 100 (2012).

The presumption of prospective application is not absolute. Watts v. Commonwealth, 468 Mass. 49, 55 (2014), citing Bradley, 466 Mass. at 553.  "In accordance with G. L. c. 4, § 6," it will not apply where "the prospective application of the legislation in question would be 'inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute.'"  Watts, supra, quoting Bradley, supra.  See Commonwealth v. Didas, 471 Mass. 1, 5 (2015) (same).  We generally treat these as "distinct exceptions."  Watts, citing Bradley, supra.  See Bradley, supra ("Legislature intended that

---

post facto analysis regardless of whether the amendment appears procedural.  See Collins v. Youngblood, 497 U.S. 37, 46 (1990) ("Subtle ex post facto violations are no more permissible than overt ones. . . .  [T]he constitutional prohibition is addressed to laws, whatever their form, which make innocent acts criminal, alter the nature of the offense, or increase the punishment" [quotations and citation omitted]).

there be two exceptions, perhaps often related in fact, but separate and distinct in meaning").  But see Didas, supra at 10 n.11 (single line of inquiry may be sufficient to address both exceptions where party advances essentially same argument under both exceptions).  We consider both in turn.

The presumption of prospective application is inconsistent with the manifest intent of the Legislature where an intention that the statute apply retroactively is clearly expressed.  Watts, 468 Mass. at 55, quoting Bradley, 466 Mass. at 554.  "The Legislature may clearly express its intent through the words used in a statute or the inclusion of other retroactive provisions in the statute that would make prospective application of the provision at issue anomalous, if not absurd" (quotations and citation omitted).  Bradley, supra.  Under this exception, "inferring that the Legislature probably intended retroactive application is not enough; that intent must be 'clearly expressed'" (citation omitted).  Id.

The act providing for the 1996 amendment, entitled "An Act relative to eligibility for parole," provided only,  "Section 133A of chapter 127 of the General Laws . . . is hereby amended by striking out, in line 24, the word 'three' and inserting in place thereof the following word:  five."  The Legislature did not express an intention that the 1996 amendment apply retroactively.  Indeed, "the section is silent as to its

temporal application." Bradley, 466 Mass. at 555. See Watts, 468 Mass. at 56. Nor are there other provisions included in the act that would make prospective application of the amended § 133A "anomalous, if not absurd" (citation omitted). Bradley, supra at 554.

Turning to the second exception, the presumption of prospective application is "repugnant to the context of the same statute where it would be contrary to the purpose of the statute to delay the accomplishment of that purpose" (quotations omitted). Bradley, 466 Mass. at 555-556. Although "the phrase does not refer to the intent of the Legislature, and certainly does not require that the intent of the Legislature be made 'manifest,' it does compel us to discern the legislative purpose of the statute at issue and determine whether prospective application would be inconsistent with that purpose." Id. at 556.

The legislative history of the 1996 amendment demonstrates that the intent of the Legislature was to reduce the workload of the board and, "more importantly," benefit the families of murder victims, in requiring them to "undergo the trauma of a parole hearing only once every five years instead of once every three years." Memorandum regarding House Bill No. 1894, "An Act relative to eligibility for parole" (Mar. 14, 1996). See House of Representatives, Committee on Local Affairs, Fact Sheet for

House Bill No. 1894 (Feb. 9, 1995) (same). Thus, the Legislature's goal in enacting the 1996 amendment is clear. Prospective application would have the anomalous result of affording relief to some families but not others, which would be inconsistent with the Legislature's plain intention and repugnant to the context of the statute. See Bradley, 466 Mass. at 559 (where Legislature amended school zone statute to, in part, "diminish the unfair disparate impact" of prior statute "on urban and minority residents," repugnant to context of statute to apply amendment prospectively and prolong resulting unfair disparate impact of prior statute). Cf. Watts, 468 Mass. at 61-62 (although act extending jurisdiction of Juvenile Court was silent as to temporal application, it was passed with informed understanding that actual implementation would likely require additional staff and services; prospective application takes these considerations, as well as legal complexities and impact of opposite construction, into account and is not repugnant to act's purpose).

2. Application of ex post facto clause. Both art. I, § 10, of the United States Constitution and art. 24 of the Massachusetts Declaration of Rights provide protection from the operation of ex post facto laws. Clay v. Massachusetts Parole Bd., 475 Mass. 133, 135 (2016). Roberio has invited us to determine that our State Constitution affords greater protection

than that of the Federal Constitution.  We decline to do so where we have considered this issue before and have consistently considered the two as coextensive.  See Police Dep't of Salem v. Sullivan, 460 Mass. 637, 644, n.11 (2011); Commonwealth v. Cory, 454 Mass. 559, 564 n.9 (2009); Commonwealth v. Bruno, 432 Mass. 489, 492 n.4 (2000).

The prohibition against ex post facto laws serves the important, twin aims of assuring that legislative acts give fair warning of their effect and "restraining arbitrary and potentially vindictive legislation."  Weaver v. Graham, 450 U.S. 24, 29 (1981).  See Lerner v. Gill, 751 F.2d 450, 456-457 (1st Cir.), cert. denied, 472 U.S. 1010 (1985), quoting Weaver, supra at 30 ("Critical to relief under the Ex Post Facto Clause is . . . the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated").  Retroactive changes that affect parole eligibility are "a proper subject for application of the ex post facto clause."  Clay, 475 Mass. at 136 (parole eligibility is part of law annexed to crime at time of person's offense).  See, e.g., Garner v. Jones, 529 U.S. 244, 250 (2000); California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995) (Morales).  In this context, an ex post facto law is one that "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed."

Commonwealth v. Bargeron, 402 Mass. 589, 590 (1988), quoting Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798).  See Collins v. Youngblood, 497 U.S. 37, 46-47 (1990) (emphasizing that Calder decision controls).

We have stated that "the controlling inquiry as to whether the retroactive application of a law affecting parole constitutes an ex post facto violation is whether such application 'creates a significant risk of prolonging [an individual's] incarceration.'"  Clay, 475 Mass. at 136-137, quoting Garner, 529 U.S. at 251.  See Morales, 514 U.S. at 509. In this case, Roberio may establish the requisite risk either by demonstrating that the 1996 amendment is facially unconstitutional, meaning it "by its own terms show[s] a significant risk" of prolonging his incarceration, see Garner, supra at 255, or by demonstrating with evidence derived from the amendment's "practical implementation by the agency charged with exercising its discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule."  Id. at 255.  See id. at 251 ("requisite risk" can either be "inherent in the framework of amended [statute or] demonstrated on the record"); Clay, supra at 137 (same).

We recently addressed whether a 2012 amendment to § 133A increasing the number of board member votes necessary to grant parole from a simple majority to a majority vote of two-thirds

violated the ex post facto clause as applied to a juvenile homicide offender similarly situated to Roberio. Clay, 475 Mass. at 134. See G. L. c. 127, § 133A, as amended through St. 2012, c. 192, § 39. The offender had received four votes in favor of parole from a panel of seven members. Id. Under the version of § 133A in effect at the time the offender committed his crime, he would have been granted parole with this majority vote, see G. L. c. 127, § 133A, as amended through St. 1973, c. 278. However, in accordance with the 2012 amendment requiring a vote of two-thirds of the panel members, the board denied parole. See G. L. c. 127, § 133A, as amended through St. 2012, c. 192, § 39.

We reiterated that, "[u]nder Massachusetts law, the . . . board has discretionary authority to grant parole," see G. L. c. 27, § 5, and that "no one is guaranteed a grant of parole." Clay, 475 Mass. at 138-139, citing Diatchenko I, 466 Mass. at 674. Thus, "disposition of the facial challenge" would "rest on whether . . . the supermajority amendment 'increases, to a significant degree, the likelihood or probability of prolonging [an individual's] incarceration.'" Clay, supra, quoting Garner, 529 U.S. at 256.

We concluded that the inherent effect of the supermajority amendment did not create a significant risk of increased punishment for the individuals covered by the amendment. Clay,

475 Mass. at 139. Id., quoting Morales, 514 U.S. at 514 ("Absent the . . . board's decision as to [the offender's] parole application and the apparent effect on it of the supermajority amendment, we are presented with nothing beyond speculation and conjecture that the supermajority amendment to § 133A would 'increase the measure of punishment attached to the covered crimes'"). However, as applied to the offender, application of the supermajority amendment did in fact constitute an ex post facto violation because he was able to demonstrate that, but for the amendment, the board would have granted him parole. Clay, supra at 140. "This [was] not a case in which the risk of increased punishment [was] merely a 'speculative and attenuated possibility.'" Id., quoting Morales, supra at 509.

In Clay, we relied heavily on two Supreme Court cases that have direct bearing on the issue raised in this case. See Morales, 514 U.S. at 499; Garner, 529 U.S. at 244. In Morales, supra at 501-502, the Court addressed whether an amendment to California's parole procedure allowing the parole board to decrease the frequency of parole hearings violated the ex post facto clause. The prisoner in that case was a twice-convicted murderer. Id. at 502. At the time of the second murder, he would have been entitled to annual parole suitability hearings once he was parole eligible; however, the California Legislature

amended the relevant statute to allow the parole board to defer subsequent parole hearings for up to three years if the prisoner had been convicted of more than one offense that involved taking a life. Id. at 503. After the prisoner's first application for parole was denied, the parole board deferred his next hearing for three years. The prisoner claimed that the amendment violated the ex post facto clause. Id. at 503-504.

The Court concluded that the amendment did not affect the sentence for the offense but, rather, the "'method to be followed' in fixing a parole release date." Id. at 508. The prisoner urged the Court to find that any legislative change that creates a "conceivable risk of affecting a prisoner's punishment" violates the ex post facto clause. Id. The Court rejected this approach, noting that it would require an "invalid[ation] of any number of minor . . . changes that might produce [a] remote risk of impact on a prisoner's sentence," leading to a "micromanagement of an endless array of legislative adjustments to parole and sentencing procedures" that "might create some speculative, attenuated risk of affecting a prisoner's actual term of confinement by making it more difficult for him to make a persuasive case for early release, but that fact alone cannot end the matter for ex post facto purposes." Id. at 508-509. Declining to create a single "formula" for identifying legislative changes that violate the

ex post facto clause, the Court determined that in evaluating the constitutionality of an amendment, "we must determine whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Id. at 509.

The Court held that the amendment created "only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." Id. In making this determination, the Court relied on a several factors, including that the likelihood of parole for the class of prisoners affected by the amendment was remote; that the amendment was carefully tailored; that the parole board was required to make particularized findings to support its decision; and that the parole board retained discretion under the amendment to assign either an annual review or a two-year set-back period. Id. at 510-512. The Court also stated that "there is no reason to conclude that the amendment will have any effect on any prisoner's actual term of confinement, for the current record provides no basis for concluding that a prisoner who experiences a drastic change of circumstances would be precluded from seeking an expedited hearing from the [b]oard." Id. at 512.

In Garner, the Court reviewed an amendment to a Georgia parole law that reduced the frequency of parole review from every third year to every eighth year for inmates serving life

sentences.  Garner, 529 U.S. at 247.  The Court stated that certain differences between Georgia's amended parole law and the California law reviewed in Morales, including five more years between hearings, fewer procedural safeguards, and covering more prisoners than just multiple murderers, were "not dispositive," and reiterated that there is no single formula "for identifying which legislative adjustments, in matters bearing on parole, would survive an ex post facto challenge."  Id. at 251-252.  The Court added that "States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release."  Id. at 252.

The Court concluded that the amendment to the Georgia law did not create a significant risk of prolonging the respondent's incarceration on its face because it was "qualified in two important respects.  First, the law vest[ed] the Parole Board with discretion as to how often to set an inmate's date for reconsideration, with eight years for the maximum. . . . Second, the Board's policies permit[ed] expedited parole reviews in the event of a change in their circumstance or where the Board receives new information that would warrant a sooner review" (citation omitted).  Id. at 254.

The Court stated that "[w]hen the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by

the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule," id. at 255, and concluded that on the record before it, the Court could not determine whether the change in the Georgia law "lengthened the respondent's time of actual imprisonment." Id. at 256. The record before them "contained little information bearing on the level of risk created by the change in law," and "[w]ithout knowledge of whether retroactive application of the [amendment] increases, to a significant degree, the likelihood or probability of prolonging respondent's incarceration," the Court was unable to reach a conclusion concerning the respondent's as-applied challenge. Id. at 256. The Court remanded for further proceedings and emphasized that the respondent must show that, "as applied to his own sentence," the amendment created a "significant risk of increasing his punishment. This remains the issue in the case, though the general operation of the Georgia parole system may produce relevant evidence and inform further analysis on the point." Id. at 255.

a. Facial challenge. For much the same reasons discussed by the Supreme Court in Garner and Morales, we are not persuaded that there is a significant risk of prolonged incarceration "inherent in the framework" of the 1996 amendment. Garner, 529 U.S. at 251. As discussed, the decisions regarding whether,

when, and under what conditions to grant parole rest entirely with the board. See G. L. c. 27, § 5. Parole is not required; indeed, it is not even presumed. G. L. c. 27, § 5. The effect of the 1996 amendment was to allow the board to exercise one facet of its discretion. See G. L. c. 127, § 133A, as amended through St. 1996, c. 43. The 1996 amendment does not affect a covered prisoner's initial eligibility date, the standards for parole suitability, or the board's statutory obligation to "consider carefully and thoroughly" the merits of each prisoner's parole application. G. L. c. 127, § 133A. It merely affects the "method to be followed" for fixing a parole release date. Morales, 514 U.S. at 508. Critically, the 1996 amendment does not require the board to assign five-year set-back periods. Indeed, the amendment maintains the integrity of the board's ability to assign whatever set-back period it deems appropriate and necessary, as well as the discretion to revisit that decision either at the request of a prisoner or on its own initiative. G. L. c. 127, § 133A.[4] See Garner, 529 U.S. at 254

---

[4] Roberio attempts to distinguish his case from Garner v. Jones, 529 U.S. 244, 254 (2000), and California Dep't of Corrections v. Morales, 514 U.S. 499, 508 (1995), by arguing that, although the board has the discretion to grant expedited hearings, it does not exercise that discretion in practice. See 120 Code Mass. Regs. § 304.03 (2017) (providing for reconsideration of board decision). This argument affects the as-applied analysis only. See Clay, 475 Mass. at 140, quoting Garner, supra at 255 (petitioner may demonstrate requisite risk

(parole board's policies permitted expedited parole reviews in event of change in circumstance or where parole board received new information that would warrant earlier review); Morales, supra at 512-513 (record provided no basis for concluding that prisoner who experienced drastic change of circumstances would be precluded from seeking expedited hearing from parole board).

Roberio urges us to draw a distinction between his position and those of the petitioners in Garner and Morales based on his status as a juvenile homicide offender, because as a juvenile offender he has greater prospects for reform.  We conclude that such a distinction is unnecessary.  As an initial matter, we note that in the context of a facial challenge, we consider the impact that the amendment will have on the entire class of persons covered by the amendment.  In this case, the class of prisoners covered by the 1996 amendment consists of prisoners serving life sentences with the possibility of parole.[5]  For

---

with evidence derived from amendment's "practical implementation").

[5] "Every prisoner who is serving a sentence for life in a correctional institution of the commonwealth, except prisoners confined to the hospital at the Massachusetts Correctional Institution, Bridgewater, except prisoners serving a life sentence for murder in the first degree who had attained the age of [eighteen] years at the time of the murder and except prisoners serving more than [one] life sentence arising out of separate and distinct incidents that occurred at different times, where the second offense occurred subsequent to the first conviction, shall be eligible for parole at the expiration of

purposes of the maximum permissible set-back period, the statute does not make a distinction between juvenile and adult offenders.

Nonetheless, we conclude that any risk that the 1996 amendment might have a more significant impact on juveniles than it does on adults is sufficiently mitigated by the fact that juveniles are already afforded certain protections in the parole process for the express purpose of guaranteeing that those offenders will be afforded a meaningful opportunity to be considered for parole. We recognized in Diatchenko I, 466 Mass. at 670, quoting Miller, 567 U.S. at 471, that "children are constitutionally different from adults, for purposes of sentencing," because they have "diminished culpability and greater prospects for reform." Flowing from that recognition was our directive to the board that it consider a prisoner's juvenile status at the time of his parole, see Diatchenko I, supra at 674 ("board to evaluate the circumstances surrounding the commission of the crime, including the age of the offender, together with all relevant information pertaining to the offender's character and actions during the intervening years since conviction. By this process, a juvenile homicide offender will be afforded a meaningful opportunity to be considered for

---

the minimum term fixed by the court under [G. L. c. 279, § 24]." G. L. c. 127, § 133A.

parole suitability"), and our directive that such offenders be afforded the procedural protections of representation by counsel, as well as the opportunity to obtain expert assistance in connection with that initial parole hearing.[6]  Diatchenko v. District Attorney for the Suffolk Dist., 471 Mass. 12, 32 (2015) (Diatchenko II).  See G. L. c. 127, § 133A ("If a prisoner is indigent and is serving a life sentence for an offense that was committed before the prisoner reached [eighteen] years of age, the prisoner shall have the right to have appointed counsel at the parole hearing and shall have the right to funds for experts pursuant to [G. L. c.] 261").  Notwithstanding these special considerations, we emphasized that, even in cases of juvenile homicide offenders, under art. 26, the offender is entitled only to a meaningful opportunity for release; parole is not guaranteed.  Diatchenko II, supra at 29–30.

In sum, we conclude that the 1996 amendment is not unconstitutional on its face.  See Garner, 529 U.S. at 255; Morales, 514 U.S. at 514; Clay, 475 Mass. at 139-140.

---

[6] The board was cognizant of its obligation to consider Roberio's juvenile status and noted in its decision, "While Roberio's age and development at the time of the crime are important factors to consider in assessing his parole suitability, the most important criteria in the analysis of parole suitability remains whether Roberio meets the legal standard for parole."

b.  <u>As-applied challenge</u>.  We next consider whether the amendment is unconstitutional as applied to Roberio.  An offender must demonstrate, "by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule."  See <u>Garner</u>, 529 U.S. at 255.  The record evidence concerning the board's practical implementation of the 1996 amendment, though uncontested, is extremely limited.  Upon close examination, it does not afford us the necessary context to draw sound conclusions with regard to the board's overarching practices.

In pressing his claim, Roberio relies on affidavits from two attorneys, Patricia Garin and Barbara Kaban, who draw from their experiences with the board in practice and their analysis of parole data collected over certain periods.  Attorney Garin focuses her practice on criminal defense and prisoners' rights, with a concentration on issues relating to parole.  She also teaches a course on prisoner rights and supervises the prisoners' rights clinic at Northeastern University School of Law.  Attorney Kaban is the principal investigator for a study of Massachusetts juvenile homicide offenders funded by the Shaw Foundation.  She also has served as the director of juvenile appeals for the Committee for Public Counsel Services, where her

responsibilities included monitoring the outcomes of parole hearings for juvenile homicide offenders.

Their affidavits suggest that the board is exercising its statutory responsibility to "consider carefully and thoroughly the merits of each such case" in determining whether to release a prisoner on parole and, where parole is denied, in determining the length of the set-back period. G. L. c. 127, § 133A. Attorney Garin's review of parole statistics for 2012 reflects that the board issued records of decision for 134 prisoners that year and that 108 were denied parole. Of the 108 prisoners denied parole, seventy-seven received five-year set-back periods. Attorney Kaban's affidavit states that since 2013, the board has held parole hearings for thirty-four juvenile homicide offenders, thirteen of whom the board granted parole.

What gives cause for concern is Attorney Garin's assertion, unrebutted by the board, that, in over thirty years of experience, she has "no knowledge of the board ever allowing a motion for reconsideration to reduce a lifer's setback period" or ever acting on its own "to hold a review hearing sooner than the setback period identified in the decision denying parole." If a prisoner's opportunity to seek and be afforded an expedited review is for all practical purposes illusory, as the record may suggest, then application of the 1996 amendment might create a significant risk of prolonging the length of incarceration for

those prisoners who, after the imposition of a four- or five-year set-back period, can demonstrate a material change in circumstances that would warrant an earlier review of the merits of their parole applications. Whether the board in practice exercises its discretion to expedite review hearings for those prisoners that have demonstrated a material change in circumstances would significantly affect our as-applied analysis. See Garner, 529 U.S. at 254.

Without a comprehensive demonstration of the board's practical application of the 1996 amendment since the date of its enactment, we are unable to reach a conclusion concerning Roberio's as-applied challenge. Here, it is apparent that further discovery is necessary, and we remand the case for that purpose. See Garner, 529 U.S. at 256, 257. On remand, Roberio is entitled to obtain discovery from the board identifying the cases, if any, where it has allowed a motion for reconsideration to reduce the set-back period of a prisoner with a life sentence or acted on its own to hold an earlier review. If the board can identify no such cases, the board should be allowed the chance to furnish evidence demonstrating that the opportunity for a

prisoner with a life sentence to obtain a reduction in the set-back period is not, in fact, illusory.[7]

Conclusion.  The 1996 amendment does not create a significant risk of prolonging incarceration on its face. Nonetheless, further discovery concerning the board's implementation of the 1996 amendment is necessary to determine whether the amendment, as applied to Roberio, is unconstitutional.  Accordingly, we vacate the Superior Court judge's order allowing the board's motion for judgment on the pleadings and remand for further proceedings consistent with this opinion.

So ordered.

---

[7] The factual determination is not whether Roberio's petition for an early hearing, which was summarily denied without explanation on April 10, 2018, would have been granted if the opportunity to seek an early hearing based on a change in circumstances were not illusory.  Unless we allow the deposition of each member of the board, which we do not propose, a prisoner cannot prove that he would have been granted an earlier hearing if the board gave him a meaningful opportunity to obtain one. Rather, the factual determination is whether the board provides prisoners with a meaningful opportunity to obtain an earlier hearing.  This must be measured by statistics or other evidence reflecting what the board actually does, and not by what the board says it might be willing to do.